JUDGE PRYOR
delivered the hollowing as his dissenting .OPINION:
I feel constrained by a sense of duty, and from no desire to be at variance with my associates in their views expressed in the opinion rendered, to give my reasons for dissenting from that opinion.
The third section of the act under which the claim of the appellee is asserted reads as follows, viz.: “Any person who wishes to appropriate any vacant and unappropriated lands may, on application to the county court in which the same lies, and paying at such prices as the court may allow, not less than five dollars per hundred acres therefor, obtain an order authorizing him to enter and survey any number of acres of such land in the county, of not less than twenty-five nor more than two hundred acres.”
The position assumed in the opinion rendered is “that any one person may obtain patents for as many entries and surveys as he may make of vacant lands in any county, provided no one survey contains exceeding two hundred acres; ” that all the vacant land in any county may be appropriated and entered by one person, if he can obtain the order of the county court and presents his surveys to the register of the land-office, each survey calling for two hundred acres or less.
The agreed facts presented, and upon which the opinion of the court below was rendered, is where the appellee had obtained one survey of two hundred acres, and made application to the court of the same county for an additional two hundred acres.
*108 The- solution of this question will determine the rights of corporations, companies, and individuals who have under this law, as the history of the recent attempted legislation of the state will show, located and surveyed thousands of acres of these vacant lands, and are now demanding of the register patents for perfecting their titles. In order to arrive at a correct construction of this enactment it is proper first to ascertain the object the legislature had in view in its passage. There were large quantities of vacant lands in the state when this law was enacted. It was the intent of the state government to have the counties in which this land was located populated as rapidly as possible, and for the purpose of encouraging emigration and the settlement of these wild lands the county courts were required, for the small sum of not more than five dollars for every hundred acres, to make an order authorizing the party applying to enter and survey any number of acres of land in the county, containing not less than twenty-five nor exceeding two hundred acres. The land, as will be seen from the price fixed by the law, was a mere donation to the settler, and the act made liberal provisions for the purpose of attaining the object sought to be accomplished. I can not, with all due deference to the opinion of the court, perceive any other reason for the enactment of the law than to encourage the actual settlement of these waste lands. If the legislature intended that any one man should locate or enter as many surveys in any one county as he pleased, I see no reason for restricting the highest number of acres to two hundred. The act, if the state desired to sell the lands, would have authorized patents to issue for any number of acres designated by the survey. It can not be that this restriction was made to prevent conflicts in surveys, for the reason that the larger the number of surveys the more liable the entries to interfere the one with the other. In the opinion rendered, a person in order to obtain one thousand acres of land must have five *109 different surveys, more likely to produce confusion and trouble than one survey for the whole tract. It is plain, however, that the state intended the act, or an acceptance of its provisions, as a gratuity to the settler or squatter when he wished to occupy this land as a home for himself and family.
The construction placed upon the act by a majority of the court is in effect determining that the state was legislating for the interest of the speculator who could locate and enter all these lands, and require the hardy mountaineer or the actual settler to pay tribute to him by way of an increased price for the privilege of living upon it. The very law enacted by the legislature for the purpose of guarding against this evil is used by appellee as the means of thwarting the purposes of the legislature in enacting it. It will not do to say that the ninth section of this same law, authorizing the assignment of any plat or survey, is an argument in favor of the views expressed in the opinion. This power to assign and sell existed without the ninth section. The legislature never intended to prohibit the donee of this land from selling it. It is not to be presumed that the speculator could obtain thousands of entries in the names of others in order to have them assigned to him, or that the actual settlers would all deprive themselves of the comforts of home by selling out to him ■, and even if this be so, it could be argued with the same force that because one man might under a contract buy all the land in any one county, he had the right under this law to make as many two-hundred-acre surveys of unsold land in the same county as he could find land to run them off on.
I also differ from the opinion in which it is intimated that this power in the county court or right in the citizen to locate as many surveys as desired has received the judicial or official sanction of the officers of the state, and particularly of the county officers whose duty it is to protect the interest of the state and parties claiming the benefit of its provisions.
*110 Instances have doubtless occurred where patents have been issued for more land than the parties were exxtitled to; but while this is so, it will be found from the public history of such proceedings in the counties where these lands are situated that many of the county judges have refused to grant to the actual bona fide settler and citizen the right to enter more land than the two hundred acres; and hence in these counties where the lands have been of but little value there are hundreds of men who have been and ai’e now in the possession of lands, upon which they and their families have lived for nearly half a century, with no other right and title than the mere occupancy of the soil. They have been denied the right to locate more than the two hundred acres; and while one patentee may suffer by reason of the construction herein given, hundx’eds are made homeless or subjected to expensive litigation by a construction enlarging this legislative bounty, by which companies and individuals are locating thousands of acres of this land, and including pex’haps the possessions of those who have beexx denied the right to enter it under this same law.
While this case now before us only involves the right to enter an additional two hundred acres of land, I am well aware from the argument and agreed facts that it is but a test case, and that there are those who have surveyed thousands of acres now clamoring at the register’s door for patents. The progress in the improvements of the state is making these lands valuable, and I can xxot concur in what must be the inevitable result of the opinion, that the beneficial provisions of the statute were all intended for one person only, if he happened to be so fortunate as to have his surveys for all the wild lands made and entered under the order of the county court.
The register acted properly in refusing to issue the patent, and his construction is sustained, not by implication, but by the express language of the act itself.